**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer L. Matthews,        )  | No. CIV 11-290-TUC-LAB |
| Plaintiff,        ) | **ORDER** |
| vs.        ) | |
| Michael J. Astrue, Commissioner of ) Social Security,        ) | |
| Defendant.        ) | |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g). The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties. *See* FED.R.CIV.P. 73.

The final decision of the Commissioner denying benefits to the claimant is not supported by substantial evidence and free from legal error. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Specifically, the ALJ improperly discounted the treating physician's opinion of disability. The case will be remanded for payment of benefits.

PROCEDURAL HISTORY

On December 17, 2007, Matthews protectively filed an application for disability insurance benefits and supplemental security income. (Tr. 18, 118, 121) She alleged disability

beginning on August 1, 2007, due to insomnia, depression, ADHD, and migraines. (Tr. 144) Her claim was denied initially (Tr. 59-62) and upon reconsideration (Tr. 64-66). Matthews requested review and appeared with counsel at a hearing before Administrative Law Judge (ALJ) M. Kathleen Gavin on October 28, 2009. (Tr. 18, 24) In her decision, dated January 22, 2010, the ALJ found Matthews was not disabled. (Tr. 18-24)

Matthews appealed, but the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 5-7); *Bass v. Social Sec. Admin.*, 872 F.2d 832, 833 (9th Cir. 1989). Matthews subsequently filed this action appealing the Commissioner's final decision. (Doc. 1); *see* 20 C.F.R. § 422.210(a). She filed her opening brief on December 30, 2011. (Doc. 25). The Commissioner filed a responsive brief on March 14, 2012. (Doc. 28)

Claimant's Work History and Medical History

Matthews worked as a bus driver for the City of Tucson from July of 1980 to her retirement in July of 2007. (Tr. 193) In her last three years on the job, Matthews missed a lot of work due to fatigue. (Tr. 196) She therefore took retirement as soon as she could. *Id*.

After her retirement, Matthews worked briefly in a health food store. (Tr. 196) She was fired after only three weeks, however, because "[she] was not catching on fast enough." (Tr. 196) In her application for benefits, she alleged disability beginning on August 1, 2007, due to insomnia, depression, ADHD, and migraines. (Tr. 144)

In November of 2007, Matthews was examined by Eskild A. Peterson, M.D., in the Infectious Disease Clinic at the University of Arizona. (Tr. 325-26) Peterson examined Matthews' records from Drs. Carlson and Manthei and from the Mayo Clinic. *Id*. The records indicate previous work ups for Lyme serology. *Id*. They also indicate "evidence of Epstein-Barr virus in the past." *Id*. Peterson opined: "She, in all likelihood, qualifies for chronic fatigue syndrome based on the duration of symptoms and the negative work-up for all the causes of it." (Tr. 326) "She has had some mood swings, but not excessively so." *Id*. "She has the migraines." *Id*. He concluded: "Based on the above, I am not sure I have much to add except that I believe that she fulfills the CDC criteria for chronic fatigue syndrome per se." *Id*.

- 2 -

1   The record also contains treatment notes from the psychologist, Linda Burns Kynaston, Ph.D. (Tr. 455, 412-24) In February of 2008, Kynaston offered the following diagnosis: Axis I: Major Depression, Recurrent, Severe (296.33), Generalized Anxiety Disorder (300.02); Anxiety Due to an Illness (293.89), ADHD (314.01); Axis II: Borderline Personality Disorder (301.83); Axis III: Chronic Fatigue Syndrome, Migraines, Chronic Sinusitis; Axis IV: Housing, Occupational, Familial; Axis V: GAF 50, Last Year, 45. (Tr. 421) Kynaston opined that during this time, "Ms. Matthews was unable to work due to the severe and unpredictable fatigue, memory and concentration problems, mood lability, and anxiety related to the symptoms." (Tr. 455)

In April of 2008, the non-examining state agency physician, Martha Goodrich, M.D., reviewed the medical record and concluded Matthews suffers from "chronic sinusitis, allergic rhinitis, and migraines not requiring prescription medication." (Tr. 374) Goodrich noted that Matthews' primary care physician, Linda Granath, M.D., and a rheumatologist diagnosed Chronic Fatigue Syndrome. (Tr. 375) Nevertheless, she discounted their findings as "not supported by the objective MER[1], nor is it credible based on the inconsistencies between the state opinions and documentation in the MER." (Tr. 375)

In May of 2008, Kathleen Prouty, Ph.D., administered a psychological evaluation for the disability determination service. (Tr. 377-382) Prouty's diagnostic impression reads as follows: Axis I: Adjustment Disorder; Axis II: No Current Diagnosis; Axis III: Hyperlipidemia, Migraines, Chronic Sinusitis, CFS; Axis V: GAF – 70. (Tr. 380) She concluded Matthews "does not have a mental impairment that would prevent avocational or vocational functioning." (Tr. 380)

In May of 2008, non-examining state agency psychologist, Eugene Campbell, Ph.D., reviewed the medical record and completed a Psychiatric Review Technique form. (Tr. 383) He documented an affective disorder, adjustment disorder. (Tr. 383, 386) He found no

---

[1] The acronym is not explained, but it appears to refer to the medical record.

- 3 -

1  functional limitations. (Tr. 393) He concluded Matthews' condition was "nonsevere." (Tr. 395)

2  In October of 2008, a non-examining state agency physician, Christopher Malone, M.D.,
3  reviewed the record and affirmed the report earlier submitted by Martha Goodrich. (Tr. 435)

4  The record also contains treatment notes from Matthews' primary care physician, Linda
5  Granath, M.D., from approximately April of 2008 to August of 2009. (Tr. 397-410; 425-434;
6  437-454; 464-484)  In August of 2009, Granath offered the following summary diagnosis:
7  "Anxiety, ADD, Migraine [Headaches], Chronic Fatigue Syndrome, [and] Malaise." (Tr. 459-
8  463) (capitalization modified)  Granath opined that Matthews could sit and stand/walk for less
9  than two hours in an 8-hour day. (Tr. 461)  She would need to walk around after 20 minutes.
10 (Tr. 461)  She could lift and carry 10 pounds occasionally. (Tr. 462)  Granath opined that
11 Matthews' ability to tolerate work stress was so impaired that she was "[i]ncapable of even 'low
12 stress' jobs." (Tr. 460)

13 On October 28, 2009, Matthews appeared with counsel at a hearing before ALJ M.
14 Kathleen Gavin. (Tr. 34)  At the time of the hearing, Matthews was 55 years old and a high
15 school graduate. (Tr. 37, 51)

16 Matthews testified that she worked for more than 20 years as a bus driver for the city.
17 (Tr. 38)  She retired in 2007 because she was missing so much work she was afraid she would
18 be fired. (Tr. 38)  She was "just really tired and falling asleep at the wheel." (Tr. 38)  Matthews
19 explained she sometimes sleeps four or five days at a time but still does not feel rested. (Tr. 38-
20 39)  She stated: "[O]ften, I will feel like I'm coming down with the flu, and ache all over, and
21 have sore throats." (Tr. 39)

22 After she retired, Matthews tried to work part-time as a cashier, but she was fired
23 because she couldn't remember things. (Tr. 48)

24 On a typical day, Matthews has a hard time waking up. (Tr. 43)  She makes coffee and
25 lays around for an hour or two generating the energy to get up. (Tr. 43)  On good days, she can
26 do some things, but then she has to rest. (Tr. 43) She takes the medications Zoloft, Claritin, and
27 Ritalin. (Tr. 44)  She manages her own money, but she says, "I'm spacey, and I make a lot of
28

1    mistakes." (Tr. 45) She does her own grocery shopping when she has the energy. (Tr. 45) She
2    tried exercises and yoga, but she stopped because it made her feel sick again. (Tr. 46)

3    Before she was sick, she used to hike, do swing dancing, and go out to movies and clubs.
4    (Tr. 47) She cannot do those activities anymore. (Tr. 47) She still is able to make jewelry,
5    however. (Tr. 47)

6    The vocational expert, Victoria Ray, testified that driving a bus is medium work. (Tr.
7    51) Assuming Matthews could perform only light work, she could not perform her past relevant
8    work as a bus driver  (Tr. 51) She could, however, work as a ticket taker, assembler, or
9    inspector. (Tr. 52)

10   Ray further testified that someone who could sit and stand for less than two hours in an
11   8-hour day and could lift only 10 pounds occasionally, as reported by Granath, could not work.
12   (Tr. 52)

13   The record also contains third party function reports from Matthews' friend, Kim Fry,
14   her brother, Michael Matthews, and her sister-in-law, Mary Matthews. (Tr. 221-229; 230-238;
15   239-247) Fry reports that she and Matthews went out regularly, but lately Matthews has been
16   too tired to socialize. (Tr. 225-226) Michael Matthews reports that Matthews has great
17   difficulty taking care of herself and keeping her apartment clean. (Tr. 230) Mary Matthews
18   reports that Matthews used to be much more social, but she now does very little outside of her
19   home. (Tr. 243)

20
21   CLAIM EVALUATION
22   Social Security Administration (SSA) regulations require that disability claims be
23   evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920; *Baxter*
24   *v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of
25   whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4),
26   416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.*
27   If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two
28   which requires a determination of whether the claimant has a medically severe impairment or

combination of impairments. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment more than minimally limits or restricts his or her "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ concludes the impairment is not severe, the claim is denied. *Id.*

Upon a finding of severity, the ALJ proceeds to step three which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity[2] (RFC) to perform past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If yes, then the claim is denied. *Id.* If the claimant cannot perform any past work, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

In determining whether the claimant retains the ability to perform other work, the ALJ may refer to the Medical Vocational Guidelines ("the grids") promulgated by the SSA. *See* 20 C.F.R. Pt. 404, Subpt. P, App.2; *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576-577 (9th Cir. 1988). The grids categorize jobs according to their exertional requirements such as sedentary work, light work, or medium work. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). The grids calculate whether or not the claimant is disabled based

---

[2] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

1  on the claimant's exertional ability, age, education, and work experience. *Id.* The grids are a
2  valid basis for denying claims where they completely and accurately describe the claimant's
3  abilities and limitations. *Id.* at 1101-02. If the claimant has only exertional limitations, the
4  claim may be resolved based only on the grids. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115
5  (9th Cir. 2006).

6  If the claimant has significant non-exertional limitations, the grids do not apply. *Penny
7  v. Sullivan,* 2 F.3d 953, 958-959 (9th Cir.1993). "Non-exertional limitations are limitations that
8  do not directly affect a claimant's strength." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir.
9  1988). Mental limitations, for example, are non-exertional. *Id.* at 1340-41. If significant non-
10 exertional limitations prevent the claimant from performing the full range of work in any
11 exertional category, the ALJ must take the testimony of a vocational expert to deny the claim.
12 *Id.* at 1341.

13

14  The ALJ's Findings

15  At step one of the disability analysis, the ALJ found Matthews "has not engaged in
16 substantial gainful activity since August 1, 2007, the alleged onset date." (Tr. 20). At step two,
17 she found Matthews "has the following medically determinable impairments: migraines and
18 adjustment disorder." (Tr. 20). She determined, however, that Matthews does not have a *severe*
19 impairment or combination of impairments. (Tr. 20) Accordingly, she concluded Matthews is
20 not disabled. (Tr. 24).

21

22  STANDARD OF REVIEW

23  An individual is entitled to disability benefits if he or she demonstrates, through
24 medically acceptable clinical or laboratory standards, an inability to engage in substantial
25 gainful activity due to a physical or mental impairment that can be expected to last for a
26 continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "[A]
27 claimant will be found disabled only if the impairment is so severe that, considering age,
28 education, and work experience, that person cannot engage in any other kind of substantial

1  gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir.
2  1993) (*quoting Marcia v. Sullivan,* 900 F.2d 172, 174 (9th Cir. 1990)).

3    The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g),
4  1383(c)(3). The decision to deny benefits "should be upheld unless it contains legal error or is
5  not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).
6  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept
7  as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a
8  preponderance." *Id.*.

9    "Where evidence is susceptible to more than one rational interpretation, the ALJ's
10 decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider
11 the entire record as a whole and may not affirm simply by isolating a specific quantum of
12 supporting evidence." *Id.*

13   In evaluating evidence to determine whether a claimant is disabled, the opinion of a
14 treating physician is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir.
15 1993). The Commissioner may reject a treating physician's uncontradicted opinion only if he
16 sets forth clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.
17 1995). If the treating physician's opinion is contradicted by another doctor, the Commissioner
18 may reject that opinion only if he provides specific and legitimate reasons supported by
19 substantial evidence in the record. *Lester,* 81 F.3d at 830. No distinction is drawn "between
20 a medical opinion as to a physical condition and a medical opinion on the ultimate issue of
21 disability." *Rodriguez v. Bowen*, 876 F.2d 759, 761 n.7 (9th Cir. 1989).

22   "The opinion of an examining physician is, in turn, entitled to greater weight than the
23 opinion of a non[-]examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).
24 "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the
25 uncontradicted opinion of an examining physician." *Id.* "[T]he opinion of an examining doctor,
26 even if contradicted by another doctor, can only be rejected for specific and legitimate reasons
27 that are supported by substantial evidence in the record." *Id*. at 830-31.

28

- 8 -

"Where medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner]." *Magallanes,* 881 F.2d 747, 751 (9th Cir. 1989) (punctuation omitted). The Commissioner's finding that a claimant is less than credible, however, must have some support in the record. *See Light v. Social Security Administration,* 119 F.3d 789 (9th Cir. 1997).

The ALJ need not accept the claimant's subjective testimony of disability, but if she decides to reject it, "she must provide specific, cogent reasons for the disbelief." *Lester,* 81 F.3d at 834. "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*

### DISCUSSION

The ALJ committed legal error when she improperly discounted the opinion of Matthews' treating physician, Linda Granath, M.D., who diagnosed Matthews with disabling Chronic Fatigue Syndrome. This error resulted in the ALJ's improper finding at step two of the disability analysis that Matthews does not suffer from a severe impairment. *See Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007).

"Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians." *Smolen,* 80 F.3d at 1285. The Commissioner may reject the treating physician's uncontradicted[3] opinion only if the Commissioner sets forth clear and

---

[3] The record contains a report from the non-examining state agency physician, Martha Goodrich, M.D., who reviewed the medical record and concluded Matthews does not suffer from Chronic Fatigue Syndrome. (Tr. 375) The ALJ, however, did not mention this report in her decision discounting Granath's opinions. (Tr. 375) Accordingly, the court applies the "clear and convincing" test. *See Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003); *Pinto v. Massanari,* 249 F.3d 840, 847-48 (9th Cir. 2001). The court's conclusions would not change if the "specific and legitimate" test were applied instead.

- 9 -

convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1996); *Magallanes*, 881 F.2d at 751. "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Orn*, 495 F.3d at 632. "The ALJ must do more than offer [her] conclusions." *Id*. "[She] must set forth [her] own interpretations and explain why they, rather than the doctor['s], are correct." *Id*. If the treating source's opinion "is well-supported by medically and acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it must be given "controlling weight." 20 C.F.R. § 404.1527(c)(2); § 416.927(c)(2).

In this case, Granath diagnosed Matthews with disabling Chronic Fatigue Syndrome. The ALJ rejected her diagnosis finding that Matthews suffers only from "migraines and adjustment disorder." (Tr. 20) The ALJ's stated reasons for doing so do not constitute clear and convincing evidence.

The ALJ conceded that the medical record contains subjective reports of fatigue, but she discounted Granath's diagnosis because there was a lack of objective physical evidence supporting the diagnosis. (Tr. 22) She further stated that the diagnosis was "not supported by her treatment records and appear to be largely based on claimant's subjective complaints. . . ." (Tr. 22)

The ALJ's stated objections are not legally sufficient. "Merely to state that a medical opinion is not supported by enough objective findings" is not enough to constitute a "clear and convincing" reason for rejecting the uncontradicted opinion of a treating physician. *Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir.1989) (quoting *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir.1988))  In fact, the ALJ's stated objection does not even constitute a "specific and legitimate" reason, which is required to reject a treating physician's contradicted opinions. *Embrey*, 849 F.2d at 421. "Disability may be proved by medically-acceptable clinical diagnoses, as well as by objective findings." *Rodriguez*, 876 F.2d at 762 (quoting *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir.1975)). "To say that medical opinions are not supported by sufficient objective findings" does not give proper weight to the "subjective

- 10 -

1 elements" of the doctors' diagnoses, which "are important and properly play a part in their
2 medical evaluations." *Embrey*, 849 F.2d at 422.

3 　　　The ALJ's criticism that Granath's opinion is not supported by objective physical
4 evidence is particularly troubling given Matthews' diagnosis of Chronic Fatigue Syndrome
5 (CFS). CFS is not diagnosed by objective laboratory tests. *See* (Tr. 459) ("There are no tests
6 for these illnesses.")

7 　　　"CFS is a systemic disorder consisting of a complex of symptoms that may vary in
8 incidence, duration, and severity." SSR 99-2p. It manifests itself in symptoms such as
9 impairment of short-term memory or concentration, sore throat, tender lymph nodes, muscle
10 pain, joint pain without swelling or redness, headaches, unrefreshing sleep, post-exertional
11 malaise, muscle weakness, swollen underarm glands, sleep disturbances, visual difficulties,
12 lightheadedness, increased fatigue with prolonged standing, neurocognitive problems such as
13 difficulty comprehending and processing information, fainting, dizziness, and mental problems
14 such as depression, irritability or anxiety. *Id.* It results in few, if any, objective signs. *Id.*
15 "[A]n extended medical history of 'nothing-wrong' diagnoses is not unusual for a patient who
16 is ultimately found to be suffering from the disease." *Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir.
17 1994).

18 　　　Because of the unusual nature of Chronic Fatigue Syndrome and its lack of objective
19 physical signs, the ALJ's criticism that Granath's diagnosis is unsupported by clinical findings
20 or relies unduly on the patient's subjective complaints is not well taken. *See, e.g., Reddick v.*
21 *Chater*, 157 F.3d 715, 725-726 (9th Cir. 1998) ("The ALJ's reasoning runs counter to the CDC's
22 published framework for evaluating and diagnosing CFS.").

23 　　　The ALJ also complains that Granath's treatment records were compiled with
24 "claimant's input and her observations." (Tr. 22) She seems to find this objectionable, but she
25 does not explain why. There is no indication in the record that Matthews is malingering. (Tr.
26 459) Accordingly, it is not unusual or suspicious that the medical records should reflect the
27 input, observations, and symptoms as reported by the patient.

28

1  Granath's opinion is supported by Peterson, who also diagnosed Chronic Fatigue
2  Syndrome. (Tr. 325-26) Peterson is not a treating physician, but his opinions are nevertheless
3  entitled to special deference because he is a specialist in infectious diseases. *Id*. "[T]he
4  opinions of a specialist about medical issues related to his or her area of specialization are given
5  more weight than the opinions of a nonspecialist." *Smolen*, 80 F.3d at 1285; *See* 20 C.F.R. §§
6  404.1527(c)(5), 416.927(c)(5).

7  The ALJ also states that Granath's findings are not supported by her treatment record,
8  but she gives no specifics. Without specifics, analysis of the ALJ's objection is particularly
9  problematic. *See Reddick v. Chater*, 157 F.3d 715, 725 n. 7 (9th Cir. 1998) ("In *Embrey* we
10 rejected the ALJ's conclusory statements rejecting the treating doctor's opinion on disability
11 . . . .").

12 Moreover, contrary to the ALJ's assertion, the medical record in this case supports
13 Granath's diagnosis. Matthews has a history of memory deficits, muscle weakness, headaches,
14 unrefreshing sleep, and anxiety, all of which are consistent with CFS. (Tr. 459)

15 The Commissioner, on the other hand, argues that evidence in the record supports the
16 ALJ. (Doc. 28) He argues Granath's opinion of disability is inconsistent with her findings that
17 Matthews had "full cervical spine ranges of motion; clear lungs with normal respiration depth
18 and rhythm; normal motor functioning bilaterally; and normal gait and stance." (Doc. 28, p. 18)
19 He further notes that the decision of the ALJ is supported by the opinions of the non-examining
20 state agency physicians, Goodrich and Maloney. (Doc. 28, p. 14) Unfortunately, the ALJ did
21 not make these arguments in her decision, and therefore this court may not consider them.
22 *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *Pinto v. Massanari*, 249 F.3d 840, 847-
23 48 (9th Cir. 2001).

24 The ALJ erred when she discounted the opinions of Matthews' treating physician,
25 Granath. Accordingly, Granath's opinions should be credited as a matter of law. *Benecke v.*
26 *Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996)
27 ("Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a
28 treating or examining physician, we credit that opinion as a matter of law.").

1     "Where we conclude that a claimant's testimony or a doctor's opinion should have been credited and, if credited, would have led to a finding of eligibility, we may order the payment of benefits." *Regennitter v. Commissioner*, 166 F.3d 1294, 1300 (9th Cir. 1999); *see also Ghokassian v. Shalala*, 41 F.3d 1300, 1304 (9th Cir. 1994) (remanding for payment of benefits where the Secretary did not provide adequate reasons for disregarding the treating physician's opinion). In this case, the ALJ improperly discounted the opinion of Matthews' treating physician. Crediting this opinion leads necessarily to a finding of disability. *See* (Tr. 52, 459-463).

    There are no outstanding issues to be resolved. Remand of the case would serve no useful purpose. *See Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996) ("We may direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose."). A finding of disability should be entered. *See also Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.").

    IT IS ORDERED that the final decision of the Commissioner is reversed. The case is remanded for payment of benefits.

    The Clerk of the Court is directed to prepare a judgment and close this case.

    DATED this 12th day of July, 2012.

Leslie A. Bowman
United States Magistrate Judge